UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SIRO PROP OAKWOOD LLC AND SIRO PROP BIG RIVER LLC, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:24CV1035 HEA |
| BERMUDA DRIVE HEALTHCARE LLC, CEDARS COURT HEALTHCARE LLC, VERTICAL HEALTH SERVICES, LLC, AND WILLIAM MILLER, | ) | |
| Defendants, | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment, [Doc. No. 130]. Defendants oppose the Motions. For the reasons set forth below, the Motion will be denied.

**Facts and Background**

Plaintiffs brought this four-count Complaint against Defendants for their breach of two leases and two guarantees insuring each lease. In Count I, Plaintiff Siro Prop Big River, LLC brings a breach of lease claim against Cedars Court Healthcare LLC for its alleged failure to pay rent. In Count II, Plaintiff Siro Prop Big River, LLC brings an action on the personal guaranty against Vertical Health Services LLC which agreed to guarantee Cedars Court Healthcare LLC's

obligation under the lease in Count I. In Count III, Siro Prop Oakwood, LLC brings a breach of lease claim against Bermuda Drive Healthcare LLC for its alleged failure to pay rent. In Count IV, Siro Prop Oakwood, LLC brings an action on the personal guaranty against Vertical Health Services LLC which agreed to guarantee Bermuda Drive Healthcare LLC's obligation under the lease in Count III.

Big River owned the skilled nursing facility located at 6400 The Cedars Court, Cedar Hill, Jefferson County, Missouri (the "Cedar Hill Property"). On June 1, 2023, Cedars Court executed a five-year written lease for this property (the "Cedar Hill Lease") and operated a facility known as Arbor View Nursing and Rehabilitation. Section 3.2 of the Cedar Hill Lease provides Cedars Court was to pay a base rent of $80,000.00 per month. The lease also provides it was to pay all utilities and real estate taxes during the term of the lease, a 5% late charge on unpaid amounts, and 10% interest on all delinquencies.

Vertical Health executed and delivered a Guaranty of Lease on June 1, 2023. The Guaranty provides that Vertical Health guaranteed the obligations of Cedars Court under the Cedar Hill Lease.

Oakwood owned the skilled nursing facility at 5303 Bermuda Drive, Normandy, St. Louis County, Missouri (the "Normandy Property). On June 1, 2023, Bermuda entered into a five-year lease for this property (the "Normandy

Lease") to operate Amberwood Estates Nursing and Rehabilitation. The Lease provides that Bermuda was to pay a base rent of $90,000.00 per month. Under the Lease, Bermuda is responsible for utilities, real estate taxes, a 5% late charge on unpaid amounts, and 10% interest on all delinquencies.

Vertical Health executed and delivered a Guaranty of Lease on June 1, 2023. The Guaranty provides that Vertical Health guaranteed the obligations of Bermuda under the Normandy Lease.

Defendants do not dispute the execution of the leases and guaranties. They contend, however, that they were fraudulently induced to enter into the leases and guaranties by representations made by Samuel Goldner, on behalf of Plaintiffs, and who signed the leases as authorized representative for Plaintiffs.

Defendants argue Mr. Goldner made false statements to Mr. Miller and Vertical Health Services, LLC ("VHS"), and concealed material information from them in order to induce Miller, VHS, and the VHS Operators to execute the Leases, Guaranties, Operation Transfer Agreements, ("OTA"). Specifically, Defendants contend Mr. Goldner misrepresented cash flow for all of the Facilities that were transferred to VHS and its companies, including the Amberwood and Arbor View facilities. Defendants further assert Mr. Goldner represented that the cash flow for the Amberwood and Arbor View facilities would be sufficient for VHS to be able to timely pay the rent in the Leases. Defendants claim this was false and Mr.

Goldner knew it. Mr. Goldner concealed that his back office was no longer providing billing services; that Mr. Goldner and Plaintiffs had ceased filing Medicare cost reports; and that, as a result, there would be long delays in receiving payments from Medicaid, Medicare, and other payors. This meant that the cash flow that Mr. Goldner had represented would exist at Amberwood and Arbor View from the beginning of the Leases was not going to materialize for several months after VHS and its companies took over operations.

According to Defendants, Mr. Goldner also concealed that he was not planning to comply with the OTAs and was planning to refuse to pay the debts that the Goldner Operators had run up. Mr. Goldner's plan was to refuse to pay those debts knowing that VHS would have to assume the debts in order to operate.

VHS was forced to take on hundreds of thousands of dollars in debts that were the responsibility of Mr. Goldner and his companies, further undermining VHS's cash flow.

Defendants respond to the motion for summary judgment further arguing that Mr. Goldner also misrepresented the Medicaid Payment Rates for all of the Facilities, including Amberwood and Arbor View, claiming that the rates for 2023 and 2024 were substantially higher than they actually were. Mr. Goldner told Mr. Miller that the Medicaid Payment Rates at Amberwood and Arbor View would collectively provide over $600,000 more than they were actually set to provide.

Further, Defendants claim Mr. Goldner also misrepresented the physical condition of the buildings and the capacity of the facilities to induce VHS and the VHS Operators to enter into the Lease, Guaranties, and OTAs. Mr. Goldner represented that Arbor View was a 150-bed facility and that Amberwood was a 115-bed facility. But, shortly after VHS took over Amberwood and Arbor View, it was discovered for the first time that more than 100 beds were missing and there was only enough equipment and furniture to properly accommodate approximately 100 residents, instead of the 265 that had been represented. Much of the equipment Mr. Miller had observed during his inspection of Amberwood and Arbor View was rented or in the course of being repossessed, but Mr. Goldner neglected to share that fact.

Additionally, Defendants argue Mr. Goldner also concealed latent defects, such as necessary roof repairs that were not apparent from a visual inspection.

Additionally, Mr. Goldner repeatedly told Mr. Miller during negotiations that, due to the emergent nature of the situation, the parties had to conduct an expedited due diligence. He put extreme pressure on VHS to agree to take over his Facilities, including Amberwood and Arbor View, citing the risks to the residents if the Facilities were shut down or taken over by regulators. When Mr. Miller expressed concerns about the speed of the due diligence, Mr. Goldner assured him that he did not need to worry because the information Mr. Goldner was providing

was accurate, and because Mr. Goldner would be the landlord for the Facilities. Mr. Goldner told Mr. Miller that he appreciated Mr. Miller's help and that he would make concessions and not enforce the Leases, Guaranties, or OTAs to the extent the information he was providing was not accurate or if unexpected issues arose so that VHS and the VHS Operators would not be harmed due to issues that normally would have been addressed during due diligence. Such concessions included permitting VHS to pay rent later than is stated in the Leases, pay less rent than is stated in the Leases, and/or apply offsets against the rent due. According to Defendants, the information Mr. Goldner provided before the deal was executed was inaccurate and normally would be addressed in due diligence.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged,

if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co*., 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp*., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see *Crossley v. Georgia-Pac. Corp*., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

**Discussion**

The statements at issue in the case before the Court, were representations of fact not opinion. They were specific and definite. They are also more in the nature of statements of the existing situation rather than predictions of the future. Further, the Court finds that there is evidence from which a reasonable jury could find that even if they were expressions of opinion, Mr. Goldner may have led Defendants to believe that he would support variations with the manner in which payments were to be made if the information he provided was inaccurate. There is also evidence that Mr. Goldner knew the information he was providing was not truthful since he was the owner/landlord of the property and was using his relationship with Mr. Miller to convince him to enter into the Leases, Guaranties and OTAs.

The nine elements of fraudulent inducement:

> a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury.

*SBFO Operator No. 3, LLC v. Onex Corp*., 101 F.4th 551, 557 (8th Cir.), cert. denied, 145 S. Ct. 547, 220 L. Ed. 2d 205 (2024).

Although Plaintiffs argue that Mr. Miller’s declaration contains inadmissible hearsay, the declaration sets out what Mr. Goldner told Mr. Miller, according to Mr. Miller, to entice him to enter into the Leases, Guaranties, and OTAs, rather than being presented for the truth of the statements.

While Plaintiffs attempt to present this case as a simple Lease and Guaranty arrangement wherein Defendants failed to pay rent as provided in the Leases, such clear-cut version of events is not at all the situation presented. Indeed, Defendants urge that there cannot be a breach of the Leases because of the claimed fraudulent inducement occasioned by Mr. Goldner. They contend, they are not legally required to honor the terms of the Leases and Guaranties because they were fraudulently induced to enter into them by representations made by Mr. Goldner, on behalf of Siro Prop Oakwood LLC and Siro Prop Big River LLC. Genuine issues of material fact remain disputed and accordingly, judgment as a matter of law is not appropriate at this time.

**Conclusion**

Based upon the foregoing analysis, Plaintiffs are not entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment, [Doc. No. 130], is **DENIED**.

Dated this 22nd day of September, 2026.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE